1 F.3d 1244
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Donald NOBLES, a.k.a. Jamal Asad Sharif, Plaintiff-Appellant,
v.
Linda HOFFMAN, et al., Defendants-Appellees.
 No. 92-2692.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 21, 1993.*
Decided Aug. 2, 1993.
 
 Before MANION and ILANA DIAMOND ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff, Donald Nobles, also known as Jamal Sharif, filed this pro se civil rights action pursuant to 42 U.S.C. Sec. 1983. Nobles alleged that in retaliation for his legal and political activities, prison officials at Menard Correctional Center opened his legal mail outside of his presence, deliberately misdelivered and damaged his Islamic newspapers and magazines, and returned photographs mailed to him that were allegedly gang-related. Following a bench trial, the district court entered judgment for the defendants. Plaintiff appeals and we affirm.
 
 I. BACKGROUND
 
 2
 Photographs sent to Nobles from his sister-in-law were returned because the stances and hand-positions portrayed were identified as being gang-related. Nobles alleged that defendants interfered with his mail, in retaliation for an article written by plaintiff and published in "The Muslim Journal," which criticized prison officials in their dealings with gangs in prison. He argued that the identified symbols in the photographs were religious in nature and asserted that the return of these photographs violated his First and Fourteenth Amendment rights. He claimed that his Islamic newspapers and magazines were damaged and receipt delayed by deliberate misdelivery. He also alleged that his legal mail was opened outside of his presence on numerous occasions. Nobles maintained that these intentional acts were motivated by racial-hatred and discrimination for his religious beliefs. Finding that Nobles had failed to prove any First Amendment violation, the district court entered judgment for the defendants. In so concluding, the court found that Nobles had proved only a short-term noncontent-based disruption in delivery of his mail, that the return of the photographs was justified by legitimate penological concerns, that the procedural safeguards available satisfied due process, and finally, that there was no evidence of discrimination.
 
 II. ANALYSIS
 
 3
 On appeal from a case tried to the bench, we review the court's legal conclusions de novo, but review findings of fact only for clear error. Selan v. Kiley, 969 F.2d 560, 567 (7th Cir.1992); Oddi v. Ayco Corp., 947 F.2d 257, 261 (7th Cir.1991). A finding is clearly erroneous when, although there is evidence to support it, after reviewing the record on the whole, we are left with the definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985).
 
 A. First Amendment
 
 4
 As a prisoner, Nobles "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974). Encompassed within the First Amendment is the right to be free from certain interference with mail correspondence, Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 2261-62 (1987); Wolff v. McDonnell, 418 U.S. 539, 575-77, 94 S.Ct. 2963, 2984-85 (1974); Martin v. Brewer, 830 F.2d 76, 77-78 (7th Cir.1987), the right to receive and read written publications, Thornburgh v. Abbott, 490 U.S. 401, 413-14, 109 S.Ct. 1874, 1181-82 (1989) (applying reasonableness standard to prison regulations restricting receipt of publications); Kincaid v. Rusk, 670 F.2d 737, 744-45 (7th Cir.1982), the right of free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987); Richard v. White, 957 F.2d 471, 474 (7th Cir.1992), and the right of access to courts, Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495 (1977); Jenkins v. Lane, 977 F.2d 266, 268 (7th Cir.1992). We shall address each alleged violation in turn.
 
 
 5
 Nobles alleged that his legal mail had been opened outside his presence on several occasions. The district court found that Nobles had presented no evidence to prove this allegation. Tr. 132. Indeed, Nobles admitted in his closing argument that he could not prove that the defendants intentionally had opened his legal mail. Tr. 130. On appeal, Nobles presents only a perfunctory argument with no reason to question the district court's findings. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.) (Perfunctory and undeveloped arguments, unsupported by pertinent authority are waived), cert. denied, 112 S.Ct. 141 (1991). Nobles did adduce evidence, however, to show that his newspapers and magazines had been damaged and occasionally misdelivered. Tr. 48-51. But the defendants denied that any error in delivery or any damage was intentional. Tr. 35, 44, & 53. The district court found that the evidence proved no more than an accidental occurrence, typical of mail delivery in general, Tr. 48, 131; Findings of Fact and Conclusions of Law, at 3, and we must agree. The evidence showed only an occasional, unintentional, and noncontent-based disruption in mail delivery which is insufficient to constitute a First Amendment violation. Sizemore v. Williford, 829 F.2d 608, 610-11 (7th Cir.1987).
 
 
 6
 The main contention Nobles presses on appeal focuses on the return of photographs for gang-related reasons. Nobles alleged that the photos were arbitrarily confiscated and returned in retaliation for the article he wrote regarding control of gangs in prison. He challenged the prison regulation permitting confiscation of mail as unreasonably restrictive of his First Amendment rights and alleged that he was denied due process. The district court found that photographs portraying gang-related symbols created a legitimate penological concern justifying their return. Findings of Fact and Conclusions of Law at 3. On appeal, Nobles does not dispute that the regulation restricting receipt of photographs depicting gang-related signs is a reasonable attempt to diminish the influence of gangs in prison. See, e.g., Trapnell v. Riggsby, 622 F.2d 290, 293 (7th Cir.1980) (prison regulations governing prisoner receipt of photographs of nude or semi-nude women are constitutional). Rather, he continues to argue that the hand-positions and stances depicted are religious-based and that return of these photographs violated his First Amendment right to free exercise of religion and to receive photographs through the mail.
 
 
 7
 An inmate's First Amendment rights may be circumscribed when legitimate penological objectives--including crime deterrence, prisoner rehabilitation, and institutional order and security--outweigh preservation of the right. See O'Lone, 482 U.S. at 349, 107 S.Ct. at 2404; Turner, 484 U.S. at 85, 107 S.Ct. at 2259. To ensure appropriate deference to the judgment of prison administrators in this regard, Thornburgh, 490 U.S. at 407-08, 109 S.Ct. at 1878-79, a prison regulation that impinges on inmates' constitutional rights, is considered valid if the regulation is reasonably related to legitimate penological interests. Id.; Turner, 482 U.S. at 89, 107 S.Ct. at 2261. This Court has identified several factors relevant to evaluating the reasonableness of a prison regulation.[1] Because neither Turner nor O'Lone require a court to weigh evenly or even to consider each factor, we focus only on the second factor as dispositive in this case. Factor two considers "whether the inmates were deprived of 'all means of expression.' " O'Lone, 482 U.S. at 352, 107 S.Ct. at 2406 (quoting Turner, 482 U.S. at 92, 107 S.Ct. at 2263). Nobles does not allege that his inability to receive the photographs in any way prevented him from exercising his religious beliefs. Neither does he contend that he is deprived of receipt of all photographs, rather it is photographs portraying gang-related symbols that were rejected. We agree with Nobles that the existence of obvious, easy alternatives may be evidence that the regulation in question is unreasonable, however, he identifies no such alternatives. Appellant's Br. at 12. Moreover, Nobles offered no evidence to rebut the defendants' testimony that the photographs depicted gang-related signs. Aside from his own testimony, the district court found no support for his claim that these identifying symbols were religious in nature. This finding is not inconsistent with the record on the whole and thus, is not clearly erroneous.
 
 B. Due Process
 
 8
 Similarly, he challenges the notification procedures for returned mail as violative of due process, yet he acknowledges the availability of a grievance procedure and his conscious decision not to invoke this right. Id. In fact, Nobles presents no challenge to the district court's finding that prompt notification of returned mail was given and that the opportunity to be heard existed in the form of a grievance procedure. Findings of Fact and Conclusions of Law at 3. Finding nothing erroneous in the district court's findings, we agree that these procedures satisfy the procedural safeguards of Wolff v. McDonnell, 418 U.S. 539, 563-67, 94 S.Ct. 2963 (1974).
 
 C. Equal Protection
 
 9
 Nobles next challenges the rejection of photographs sent from black family members as an act of racial discrimination done in violation of his right to equal protection. Again, the district court found that no evidence was presented to prove a discriminatory motive underlying the challenged conduct. Tr. 133. In order to prove an Equal Protection violation, Nobles must establish "intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Huebschen v. Dept. of Health and Social Services, 716 F.2d 1167, 1171 (7th Cir.1983). Although Nobles identifies his race and his Muslim faith as the target of discrimination, he presented no evidence of discrimination against other African-American Muslim-inmates. In view of the evidence presented, we are not convinced that the challenged conduct was aimed at Nobles either because he is African-American or Muslim.
 
 D. Retaliation
 
 10
 Although the alleged interference with Nobles' mail failed to establish a constitutional violation, it may nevertheless support his claim of retaliation. Even conduct which is not otherwise constitutionally deficient, if done in retaliation for the exercise of a constitutionally protected right, is actionable under section 1983. Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir.1988); Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987) (an inmate transfer may not be used as retaliation). If Nobles would have been able to prove that the return of the photographs and the misdelivered and damaged newspapers and magazines were done in retaliation for the exercise of his First Amendment right of expression, he would have been entitled to damages. Howland, 833 F.2d at 644. The evidence presented, however, failed to show that retaliation motivated the defendants' conduct. Aside from the return of the photographs, the court found that Nobles was unable to prove any intentional mail interference within the bounds of the complaint. Tr. 73-74. This flaw precluded presentation of a chronology of events from which retaliation may be inferred.[2] Cain, 857 F.2d at 1142 n. 6; Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir.1987).
 
 E. Access to Courts
 
 11
 At trial before the bench, Nobles was required to wear the less restrictive of two pair of handcuffs. He argues that the presence of the handcuffs restricted his ability to represent himself and consequently denied him meaningful access to the courts. Appellant's Br. at 18-24. Although couched in somewhat unusual terms, Nobles' claim fails to establish both a denial of meaningful assistance and prejudice necessary to prove a violation of this right. See Jenkins, 977 F.2d at 268. Nobles cannot be heard to complain when he has clearly been afforded access to the courts. See, e.g., Tanner v. Kerner, 385 F.2d 415 (7th Cir.1967) (evidence that plaintiff had litigated rendered access to courts claim frivolous), cert. denied, 390 U.S. 1007 (1968). Likewise, Nobles suggestion that the presence of handcuffs somehow prejudiced his case is without merit.[3]
 
 F. Appointment of Counsel
 
 12
 As a corollary to his access to the courts claim, Nobles argues that the court erred in denying him appointed counsel. "Denying a request for counsel will constitute an abuse of discretion if it 'would result in fundamental unfairness infringing on due process rights.' " Jackson v. County of McLean, 953 F.2d 1070, 1071-72 (7th Cir.1992) (quoting McNeil v. Lowney, 831 F.2d 1386, 1371 (7th Cir.), cert. denied, 485 U.S. 965 (1987)). Nobles argues that the difficulties he encountered at trial support his claim that he was unable to prove his case without the assistance of counsel. Even if true, the court did not have the benefit of hindsight when it made its decision not to appoint counsel. When reviewing a decision to deny appointment of counsel "[i]f the judgment was sensible when made, the fact that after the trial it is apparent that the plaintiff was not competent to try the case after all will not establish error." Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.1993). Because the district court judge was in a better position to assess whether the plaintiff was capable of presenting his case, we defer to his determination. Id.
 
 
 13
 We find no unfairness in Nobles' case. In denying Nobles' request for a lawyer, the district court considered the relevant factors outlined in Maclin v. Freake, 650 F.2d 885 (7th Cir.1981). Although the district court found that Nobles raised a colorable claim, it determined that the case was not sufficiently complex to warrant appointment of counsel. Doc. 9, Order. The record supports this decision. The pleadings, motions, and trial transcript show that Nobles is an intelligent individual, with the ability to understand and analyze caselaw. In general, Sec. 1983 cases are considered procedurally simple, Jenkins v. Lane, 977 F.2d 266, 270 (7th Cir.1992), presenting none of those "pitfalls" that Nobles argues warrant appointment of counsel. As such, he was capable of presenting his Sec. 1983 claim before the court and the decision to deny his request for counsel was not an abuse of discretion.
 
 G. Recusal
 
 14
 Nobles' final contention on appeal is that the district judge erred in not recusing himself from the proceedings. Before trial, Nobles filed a motion for recusal accompanied by an affidavit asserting that Judge Beatty was biased or prejudiced against Nobles because he had required that Nobles wear handcuffs during a previous trial and because he made erroneous decisions contrary to law. Doc. 38. After a hearing, Judge Beatty denied the motion. Doc. 39. A district court judge's decision regarding recusal may be set aside only for an abuse of discretion, or a showing of actual prejudice. United States v. Bunch, 730 F.2d 517, 519 (7th Cir.1984). An affidavit which merely alleges bias stemming from present and past cases in which the judge and the moving party were involved does not present proper grounds for recusal. United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir.1990). The averments in Nobles' affidavit consisted of mere opinions and experiences relating to a past case. Because these allegations are insufficient to convince a reasonable person that personal bias existed, it was not an abuse of discretion to deny Nobles' motion. Nobles has also failed to demonstrate actual prejudice sufficient to establish error.
 
 
 15
 For these reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Factors relevant to this reasonableness determination include:
 
 
 [1]
 is there a valid rational connection between the regulation and a legitimate government interest behind the rule;
 
 
 [2]
 are there alternative means of exercising the right in question available to prisoners;
 
 
 [3]
 what impact would accommodation of the asserted constitutional right have on guards, other inmates and prison resources
 
 
 [4]
 whether there are obvious, easy alternatives indicating that the regulation may not be reasonable
 Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir.1991); See also Richards v. White, 957 F.2d 471, 474 (7th Cir.1992).
 
 
 [2]
 Nobles also argues that his reclassification as an escape risk was done in retaliation for his litigation. Appellant's Br. at 18. Nobles' failed to present this claim before the district court, however, and his attempt to modify his pleadings on appeal comes too late. He has therefore waived the argument. Howland, 833 F.2d at 645
 
 
 [3]
 Inapposite to the criminal cases on which Nobles relies, Nobles bore the burden of proof; here, no presumption of innocence was potentially tainted by the presence of handcuffs in a trial before the bench. See, e.g., People v. Boose, 362 N.E.2d 303 (1977); see also United States v. Fountain, 768 F.2d 790, 794 (7th Cir.1985) (although disfavored, the shackling of inmate witnesses in a criminal jury trial is permissible). Moreover, the district court offered to provide Nobles assistance with note-taking and exhibits, if needed