United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 2, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-21290
SUMMARY CALENDAR
_____

GREGORY JOSEPH SCHMIDT

Plaintiff - Appellant

v.

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION; WARDEN WATKINS; ALLEN UECKERT

Defendants - Appellees

_____

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division
(H-00-CV-1846)

_____

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Gregory Joseph Schmidt, Texas inmate #820269, proceeding *pro se* and *in forma*

*pauperis*, appeals the summary judgment dismissal of his civil rights complaint filed pursuant to

42 U.S.C. § 1983, and the denial of his motion filed pursuant to FED. R. CIV. P. 59(e).

_____

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

-1-

I. Schmidt's Civil Rights Complaint

We review the dismissal of a complaint on summary judgment *de novo*. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). Summary judgment is proper if the pleadings and discovery on file "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; FED. R. CIV. P. 56(c).

Schmidt contends that, by not allowing him to receive publications related to the Wiccan religion via incoming prisoner mail, the defendants violated his constitutional right to free exercise of religion and his right to equal protection. In short, Schmidt argues that depriving him of the two books at issue –Futhark and Living Wicca – A Further Guide for the Solitary Practicioner– interfered with his right to practice the Wiccan religion.

A. Equal Protection. To establish an equal protection violation, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Schmidt concedes that it was Allen Ueckert, the mail room supervisor, who deprived him of the books he had ordered. Schmidt did not allege that Ueckert's decision to deny receipt of the books was motivated by discriminatory intent. Rather, he alleged discriminatory intent on the part of Warden Watkins. The record supports –and Schmidt does not challenge– the finding that

Watkins did not participate in the decision to deny Schmidt the books. Therefore, Schmidt's arguments fall short of establishing an equal protection violation. *See Taylor*, 257 F.3d at 472; *Woods*, 51 F.3d at 580.

B. <u>First Amendment</u>. Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right. *See Thornburgh v. Abbott*, 490 U.S. 401, 404, 419 (1989); *Guajardo v. Estelle*, 580 F.2d 748, 761 (5th Cir. 1978); *Nobles v. Hoffman*, 1 F.3d 1244 (table), 1993 WL 299333 (7th Cir. Aug. 2, 1993)(unpublished). We accord "great deference to prison administrators' judgments regarding jail security." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

Schmidt does not challenge the legitimacy of –and, in fact, concedes as potentially "noble"– the prison's stated purpose for denying the books.[2] Rather, he argues that the symbols in the books at issue were not written solely for disruptive purposes and that the prison's response to the matter was exaggerated.

Schmidt concedes that the withheld books contain symbols and Nordic runes. He does not argue that the deprivation of these materials prevented him from exercising his religious beliefs. In fact, he admits that he has not been deprived of all Wiccan publications. Therefore, Schmidt has

---

[2] TDCJ policy prohibits the receipt of texts that contain encrypted codes or symbols not used in the written English language because such codes can be used to facilitate covert communication among inmates, thus posing a threat to institutional security.

not established a violation of his rights under the First Amendment. *See Thornburgh*, 490 U.S. at 419; *Guajardo*, 580 F.2d at 761; *Nobles*, 1 F.3d 1244.

C. <u>Abandoned Issues</u>. In the district court, Schmidt argued that the denial of the books also violated his right to due process and his right to be free from unlawful search and seizure. He argued that he was not afforded appropriate appellate avenues following the decision to withhold the written materials at issue. Furthermore, he claimed that the decision to destroy one of the books prior to the completion of prison grievance procedures constituted an unconstitutional taking of property without due process. Schmidt has not presented these issues sufficiently to this court. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995)("Although we liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel, pro se parties must still brief the issues and reasonably comply with the standards of Rule 28"). Accordingly, he has abandoned them. FED. R. APP. P. 28(a)(9)(A); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

## II. Schmidt's Rule 59(e) Motion

Schmidt argues that the district court erred by denying his post-judgment motion and by failing to consider the affidavit he submitted with the motion. A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact, or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). Schmidt fails to explain whether the evidence at issue was available during the pendency of his case and why he did not produce the affidavit in a timely fashion. He has not

shown that the denial of his post-judgment motion constituted an abuse of discretion. *See* FED. R.

CIV. P. 59(e); *Tyler v. Union Oil Co.*, 304 F.3d 379, 405 (5th Cir. 2002); *Lake Hill Motors, Inc.*

*v. Jim Bennett Yacht Sales, Inc.*, 246 F.3d 752, 758 (5th Cir. 2001).

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.