67 F.3d 301
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Howard L. JACKSON, Plaintiff-Appellant,
v.
MARION COUNTY SHERIFF'S DEPARTMENT, Marion County
Departmental Review Board, County of Marion, and Joseph G.
McAtee, Robert Schlagel, John R. Czenkusch, Wilbur Atwell,
and Robert Lanigan in their individual capacities,
Defendants-Appellees.
 No. 93-2875.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 7, 1995.*
Decided Sept. 19, 1995.
 
 Before POSNER, Chief Judge, and PELL and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Howard L. Jackson filed a civil rights action pursuant to 42 U.S.C. Sec. 1983 against various officers of the Marion County Sheriff's Department, Marion County, the Marion County Sheriff's Department and the Departmental Review Board. He contends that the Sheriff's deputies used excessive force when arresting him on a warrant for attempted murder and that the County then tried to cover up the incident. Most of Jackson's claims did not survive the defendants' motion to dismiss and motion for summary judgment. A jury denied relief on the remaining claims against defendant John Czenkusch. On appeal, Jackson raises numerous issues dealing with the district court's pretrial and trial rulings. We affirm.
 
 Pre-Discovery Dismissal of Claims
 
 2
 First, Jackson contests the magistrate judge's decision in its May 13, 1991 Order dismissing sua sponte the claims against Marion County Sheriff Joseph McAtee, Deputy Robert Schlagel, Deputy John R. Czenkusch, Captain Wilbur Atwell, and Deputy Robert Lanigan in their official capacities. The magistrate judge invoked Federal Rule of Civil Procedure 21 which permits a court to add or drop parties on its own initiative. The magistrate judge reasoned that because a suit against a government official in his official capacity is, in effect, a suit against the government entity, see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), and because Marion County, the Marion County Sheriff's Department and the Departmental Review Board were parties to the suit, the naming of the individual members of the Sheriff's Department was superfluous.
 
 
 3
 We find no error in the magistrate judge's reasoning. Although the suit against the officers in their official capacities was dropped, Jackson was still able to pursue the identical claim against Marion County. See Graham, 473 U.S. at 167 n. 14 ("There is no longer a need to bring official-capacity actions against local government officials, for ... local government units can be sued directly for damages and injunctive or declaratory relief").
 
 
 4
 Next, Jackson challenges the district court's February 19, 1992 Order granting Marion County's motion to dismiss. Pursuant to his second amended complaint, over twenty deputies surrounded his house around 4:45 a.m. on September 29, 1988 to serve him with a warrant for attempted murder. Defendants Lanigan, Schlagel, Czenkusch, and Atwell entered the house. As Jackson arose from underneath the dining room table, the officers fired twice at him allegedly without warning or provocation hitting him once in the hand. Jackson fled through the patio door, whereupon more shots were fired. He was shot five times. Jackson eventually collapsed and was found by the police dogs about 600 feet from the house. According to Jackson, the officers allowed the dogs to attack him even though he was unable to move.
 
 
 5
 In a published opinion issued today we conclude that the dismissal for failure to state a claim was improper. Nonetheless, a remand in this particular case is unnecessary. Because we affirm the district court's judgment in favor of defendants Atwell, Czenkusch, Lanigan, and Schlagel in their individual capacities finding that excessive force was not used, Jackson has no claim against the County. See Cornfield v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1328 (Easterbrook, J., concurring) (because individual defendants were found not to have violated plaintiff's constitutional rights, there was no need to address the issue of municipal liability).
 
 Request for Counsel
 
 6
 Jackson also argues that the district court abused its discretion in failing to grant his request for counsel earlier in the proceedings. Although civil litigants have no right to counsel in federal court, the district court in its discretion may request counsel to represent a litigant pursuant to 28 U.S.C. Sec. 1915(d). Jackson v. County of McLean, 953 F.2d 1070, 1071 (7th Cir.1992). We review a denial of a request for counsel for an abuse of discretion, id., and will not overturn the trial court's decision unless it is clear that the litigant was incapable of trying the case himself and was unable to retain counsel. Farmer v. Haas, 990 F.2d 319, 323 (7th Cir.), cert. denied, 114 S.Ct. 438 (1993).
 
 
 7
 The district court denied Jackson's first request in June 1990 because he had not attempted to obtain representation on his own, and because the court was unable to assess at that time whether the claims were colorable. Also, Jackson had not shown that his action involved complex issues or that he would be impaired in preparing the case for trial. His second request was denied in May 1991 because his excessive force claim did not involve complex factual issues and because his claims against the governmental entities, which had been fully briefed in response to the defendants' motion to dismiss, were not sufficiently colorable. Moreover, the court noted that Jackson had proven himself "more than capable" of adequately understanding and presenting the legal claims at issue. We do not find that the district court abused its discretion given its careful consideration of the posture of Jackson's case and his ability to present it, as well as the court's explicit comment that a request for counsel could be presented again as the case progressed. Cf. Abdul-Wadood v. Duckworth, 860 F.2d 280, 289 (7th Cir.1988) (although court did not abuse it discretion at the time it denied counsel, subsequent events indicated that the request for counsel should be reconsidered) (overruled on other grounds). In fact, Jackson's third request was granted, and counsel represented him when the defendants moved for summary judgment and at trial. Accordingly, we find no merit to Jackson's claim.
 
 Motion for Summary Judgment
 
 8
 Next, Jackson contests the district court's grant of summary judgment in favor of defendant Schlagel on the excessive force claim and in favor of defendants Schlagel, Czenkusch, Lanigan and Atwell for conspiring to use excessive force in effecting his arrest. We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to Jackson, and will affirm if no genuine issue of material fact has been established. Fed.R.Civ.P. 56(e); see also Jones v. Webb, 45 F.3d 178, 181 (7th Cir.1995).
 
 
 9
 The undisputed facts demonstrate that Deputy Schlagel was positioned approximately forty feet behind the house and down a hillside at the time the other defendants entered the house. According to Deputy Schlagel's affidavit, prior to the execution of the arrest warrant, he was told that Jackson was wanted for a shooting and that he was considered armed and dangerous. He was also informed that Jackson told his ex-wife that he was not going back to jail and that he would not be taken alive by the police. After taking position, Schlagel heard the officers inside the house yelling at someone to put their hands up. Shortly thereafter, he heard a commotion and the firing of one shot. Schlagel then heard someone coming down the hill towards him and saw that the person was not a deputy. He yelled twice to Jackson, "Halt, police officer." Jackson did not stop and Schlagel fired one shot. When Jackson continued to flee, Schlagel fired a second shot. Although Jackson appeared to stop momentarily, he then changed directions, running back up the hill. Schlagel fired a third shot. Jackson submitted no evidence to counter Schlagel's affidavit.
 
 
 10
 Jackson contends that the use of deadly force against him was unconstitutional. We disagree. The use of deadly force to prevent escape is constitutionally permissible where the suspect threatens the officer with a weapon or the officer has probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Tennessee v. Garner, 471 U.S. 1, 11 (1985). The question is whether the officer's actions were objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 396-97 (1989); Jaffee v. Redmond, 51 F.3d 1346, 1353 (7th Cir.1995).
 
 
 11
 In this case, Schlagel knew that Jackson was wanted for attempted murder. He saw Jackson running down the hill towards him after a shot was fired inside the house. Moreover, Jackson did not stop running after he was told to halt nor did he surrender after Schlagel fired the first shot. Jackson admitted in his response to the defendants' motion for summary judgment that he heard someone yell at him to stop. Schlagel did not fire at Jackson until after Jackson failed to heed his warning to halt. Under these circumstances, we conclude that it was objectively reasonable for Schlagel to use deadly force to prevent Jackson's escape. Cf. Estate of Starks v. Enyart, 5 F.3d 230, 233 (7th Cir.1993) (use of deadly force is unreasonable where the underlying crime was not accomplished violently and officer could not reasonably believe that his safety or the safety of the community was in jeopardy). The district court did not err in granting summary judgment on this claim.
 
 
 12
 Likewise, summary judgment was appropriately granted on the conspiracy claim because Jackson failed to present sufficient evidence suggesting that defendants Schlagel, Czenkusch, Lanigan and Atwell conspired to use excessive force against him. He relied solely on the defendants' meeting in a school parking lot prior to their arrival at Jackson's residence to support his claim. The defendants' affidavits establish, however, that the officers met in the parking lot to be fully briefed before they executed the warrant. They learned that they were going to serve an arrest warrant for attempted murder and that Jackson was considered armed and dangerous. All defendants state that they did not participate in, or hear any conversation about anyone intending to shoot or inflict harm on Jackson. Jackson does not offer any factual evidence in rebuttal.
 
 
 13
 A conspiracy requires an agreement and even though this agreement need not be overt there must be proof of other acts which raise an inference of a mutual understanding. Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir.1991). Acts performed together by the alleged members of the conspiracy are sufficient when they are unlikely to have been undertaken without an agreement. We do not believe that the defendants' meeting in the parking lot to learn of their next assignment and to receive instructions is an unusual or unlikely occurrence. It certainly did not raise an inference of a mutual understanding to use excessive force. Without more, this meeting is simply insufficient to raise a genuine issue of material fact as to the existence of a conspiracy.
 
 Trial Issues
 
 14
 Jackson argues that he was denied the right to an impartial jury because black persons were purposefully excluded from the jury venire. This argument was not raised before the district court and is therefore waived. Downes v. Volkswagen of America, Inc., 41 F.3d 1132, 1138 (7th Cir.1994). He also contends that the district court erred in allowing the entry of the arrest warrant into evidence and in permitting defense witness Reginald Roney to testify about the circumstances surrounding the warrant for attempted murder.
 
 
 15
 At trial, Jackson's counsel objected to the relevancy of the arrest warrant. The warrant was shown by Roney, who was responsible for gathering a team of officers to make the arrest, to the other officers. The warrant simply stated that Jackson should be arrested for attempted murder. As evidence that Jackson was suspected of committing a violent crime, the warrant was relevant in establishing the justification for the use of deadly force in preventing Jackson's escape. See Garner, 471 U.S. at 11.
 
 
 16
 We also find no error in allowing Roney to testify at trial. According to Roney's testimony, the officers were told that Jackson was wanted for attempted murder, that he had a criminal history including several felony charges involving weapons, that he was considered armed and dangerous, and that Jackson had stated he would not be taken alive.
 
 
 17
 Jackson's counsel objected to Roney's testimony outside the presence of the jury arguing that the testimony included hearsay. Because this evidence was not offered to prove the truth of the matter asserted, i.e., that Jackson clearly intended not to be arrested alive or that he had committed other crimes using weapons, the statements were not hearsay. Fed.R.Evid. 801(c); see also United States v. Guyton, 36 F.3d 655, 658 (7th Cir.1994). They were highly relevant, however, in establishing the reasonableness of Czenkusch's actions in using deadly force to prevent Jackson's escape and therefore were admissible into evidence. See Garner, 471 U.S. at 11. The district court's jury instruction restricting the use of the evidence for this purpose was proper. Fed.R.Evid. 105.
 
 
 18
 Based on the foregoing reasons, the district court's judgment in favor of the defendants is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement has been filed. Accordingly, the appeal is submitted on the briefs and the record